UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| US REAL ESTATE LIMITED PARTNERSHIP, and GILBANE BUILDING COMPANY | : | [redacted] 08 301ML |
| Vs. | : | C.A. No. |
| COLONIAL AMERICAN CASUALTY AND SURETY COMPANY | : | |

**COMPLAINT**

**Parties and Jurisdictions**

1. Plaintiff, US Real Estate Limited Partnership ("USRELP") is a Texas Limited Partnership and the owner of an office building in Providence, Rhode Island known as the GTECH Corporate Headquarters at 9 Water Place Park, Providence, Rhode Island 02903, ("the GTECH Building").

2. Plaintiff, Gilbane Building Company ("Gilbane") is a Rhode Island corporation with a principal place of business at 7 Jackson Walkway, Providence, Rhode Island 02940.

3. Colonial American Casualty and Surety Company ("Colonial") is, upon information and belief, a Maryland Corporation with a principal place of business at 3910 Ceswick Road, Baltimore, Maryland 21211.

4. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5. This Court has jurisdiction pursuant to 28 USC §1332.

FACTS

6. Gilbane and USRELP entered into an Owner-Contractor Agreement on or about December 1, 2004 for the construction of the GTECH building, a multi-story office building in Providence, Rhode Island.

7. In furtherance of its obligations under the Owner-Contractor Agreement, Gilbane hired various trade contractors to provide construction services to erect the building.

8. Gilbane entered into a Trade Contractor Agreement with Fenestration Architectural Products, LLC ("Fenestration"), on or about February 8, 2005 pursuant to which Fenestration agreed to furnish and install all materials, labor and equipment to complete all **curtain wall and metal panels** at the building. ("Trade Contractor Agreement No. 1") for the contract price of $6,559,930.

9. Gilbane entered into a further Trade Contractor Agreement with Fenestration, on or about October 28, 2005, pursuant to which Fenestration agreed to furnish and install all materials, labor and equipment to complete all **interior glass and glazing** at the building ("Trade Contractor Agreement No. 2") for the contract price of $170,323.

10. Pursuant to Trade Contractor Agreements No. 1 and 2, Fenestration was required to provide to Gilbane and USRELP, as obligees, a Labor and Material Payment Bond and a Performance Bond for each trade contract.

11 On or about February 3, 2005 Fenestration, as principal, provided to Gilbane and USRELP, as obligees, a Labor and Material Payment Bond [Exhibit A-1] and also a Performance Bond [Exhibit A-2], both of which were designated as Bond No. LR-11304-RI, which were intended to insure performance of Fenestration's obligations pursuant to Trade Contractor Agreement No. I in the penal sum of $6,559,930. These bonds were purportedly issued by defendant Colonial, as surety.

12. On or about October 26, 2005, Fenestration, as principal, provided to Gilbane and USRELP, as obligees, a Labor and Material Payment Bond [Exhibit B-1] and also a Performance Bond [Exhibit B-2], both of which were designated as Bond No. LR-11321-RI which were intended to insure performance of Fenestration's obligations pursuant to Trade Contractor Agreement 2 in the penal amount of $170,323. These bonds were purportedly issued by defendant Colonial, as surety.

13. Upon information and belief, Leo Rush ("Rush") is a New Hampshire resident and an insurance/bonding agent doing business as Leo Rush Insurance, 25 Old Lawrence Road, Phellan, New Hampshire, 03076, and was, within the recent past, an authorized agent of Colonial with full authority to issue performance bonds and labor material payment bonds in the name of Colonial as surety.

14. As an authorized agent, Rush, upon information and belief, was issued by Colonial certain indicia of his authority to underwrite bonds on behalf of Colonial which included original Power of Attorney forms and a surety corporate seal intended to be used to emboss the Power of Attorney forms with a raised emblem as evidence of authenticity.

15. Upon information and belief, unbeknownst to plaintiffs, Rush was an undisclosed equity owner of Fenestration at the time of these transactions and was self-dealing. Moreover, upon information and belief, at the time of these transactions, Rush had already been terminated by Colonial as an agent and disqualified from acting for or underwriting bonds on behalf of Colonial on grounds of dishonesty.

16. At the time of the termination, Colonial was familiar with the identity of nationwide building contractors and construction managers, such as Gilbane, who regularly provided construction services and construction management services on major construction projects throughout New England and the United States for owners who were seeking to plan and erect major buildings and complete construction projects such as the GTECH Building. Colonial knew or should have known that Gilbane, unless notified, would be the type of contractor that would be susceptible, in the future, to have dealings with a dishonest agent such as Rush or the Rush Agency. Despite its knowledge, Colonial never provided notice, either direct, by publication or any other means, to Gilbane or the general public of the termination of Rush as an authorized agent for reasons of dishonesty, and failed to otherwise undertake reasonable measures to insure that an agent, who was known throughout the construction industry as an agent for Colonial, was deprived of all opportunities to repeat the fraud in the future.

17. After termination, Leo Rush continued to purport to act as an agent for Colonial despite his termination and Gilbane, in the course of providing construction management services to USRELP for erection of the GTECH Building, received

purported surety bonds from Fenestration in the ordinary course of Gilbane's business that were fraudulently underwritten by Rush. These bonds appeared on their face to be authentic and Gilbane, acting in good faith on behalf of its contractee, USRELP, considered the bonds to be valid and issued in the ordinary course of business and, as a consequence, relied upon Colonial as Surety to stand behind the performance of Fenestration in all respects including payment of its vendors.

18. By accident, during the course of administration of Trade Contractor Agreement 1, Gilbane learned from Colonial that the surety denied ever having authorized or approved the issuance of the Performance Bonds and the Payment Bonds on the GTECH project noted in paragraphs 11 and 12 above and that the purported bonds were fraudulently issued by Leo Rush.

19. During the course of the performance of Trade Contractor Agreement 1, Fenestration defaulted by failing to discharge its contractual obligations, causing damage and loss to both Gilbane and USRELP.

20. Thereafter, Gilbane timely filed notice of the default with Colonial on or about October 6, 2006. [Exhibit C]

22. When it stripped Rush of authority, Colonial had direct knowledge that Rush was a rogue agent and that, as surety, it was required to use a high degree of care in taking the necessary steps to protect the public, specifically including national contractors and potential owners such as plaintiffs, who might, in the future, be expected to have dealings with Rush, if not notified or otherwise protected.

22. As a consequence of the foregoing, through its negligence in failing to establish proper protocols and procedures for dealing with rogue agents; and to warn prospective beneficiaries of performance and labor and material bonds, such as contractors and owners, Colonial, through numerous acts and omissions, caused harm to plaintiffs who detrimentally relied on the fraudulent documents issued by Rush. Among other reasons, Colonial was negligent as follows:

a. by failing to properly monitor the activities of its agent, Rush, who possessed indicia of authority on behalf of Colonial.

b. by failing to properly supervise its agent, Rush, to determine the nature and extent of his business activities and to require audited reports of all business activities including any ownership interest in a business for which the agent sought to provide bonding capacity through Colonial.

c. by failing to establish protocols and procedures to properly monitor, audit and supervise the Rush Insurance Agency and Rush, in order to keep itself reasonably abreast of its activities and discoverable misdeeds, prior to any fraudulent conduct causing harm.

d. by failing to provide notice to building contractors, such as Gilbane, who might reasonably be expected to be harmed by continued and/or future fraudulent activities of the rogue agent similar in nature to those for which it had actual knowledge.

e. by failing, upon learning of the misconduct of Rush and the Rush Insurance Agency, to immediately and completely divest Rush and Rush Insurance Agency of all

indicia of authority by taking reasonable steps to collect all such tangible indicia of agency authority for Colonial, thereby enabling the rogue agent to continue to perpetuate fraud.

f. by failing to provide adequate and efficient procedures to allow bond obligees to make direct contact with Colonial to quickly and efficiently verify the authenticity of any proffered bond with Colonial directly so as to determine whether or not Colonial had any record of the bond having been registered with it or reported to it by the responsible agent.

g. by failing to provide reasonable notice to those building contractors and construction managers who might, in the future, be expected to be harmed by the activities of a rogue agent, which contractors were well known to defendant, either by providing personal notice or by publication.

h. by failing, through proper investigation, to take positive follow-up actions to determine whether Rush or Rush Insurance Agency was continuing to engage in a pattern of fraudulent activities after stripping the agent of his authority.

i. by failing to take reasonable steps to learn what it could and should have learned, namely, that Rush and Rush Insurance Agency was continuing to fraudulently issue purported bonds on behalf of Colonial.

j. by failing to act reasonably in circumstances presently unknown to plaintiffs.

23. Gilbane and USRELP have joined together to jointly prosecute their claims for the losses.

As the result of the foregoing acts of negligence, plaintiffs, individually and collectively, sustained severe monetary losses when Fenestration defaulted on the project and was unable to complete its contractual obligations as required pursuant to its contract with Gilbane which was for the use and benefit of USRELP. Consequently, plaintiffs, pursuant to a Joint Prosecution Agreement, seek compensatory damages for the losses sustained, interest thereon and attorneys' fees if deemed proper by the court pursuant to the provisions of RIGL §9-1-45, as amended.

WHEREFORE, USRELP and Gilbane, seek judgment against Colonial in an amount sufficient to satisfy the jurisdiction of this Court, plus interest, costs and attorneys' fees.

US Real Estate Limited Partnership and
Gilbane Building Company,
By Their Attorneys,
HIGGINS, CAVANAGH & COONEY, LLP

By_______________________

John T. Walsh, Jr. (#0483)
Lawrence P. McCarthy, III (#2860)
123 Dyer Street
Providence, RI 02903
(401) 272-3500
(401) 273-8780 (fax)