UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

US REAL ESTATE LIMITED PARTNERSHIP,
and GILBANE BUILDING COMPANY

            v.                          C.A. No. 08-301ML

COLONIAL AMERICAN CASUALTY AND
SURETY COMPANY
LEO RUSH INDIVIDUALLY and
LEO RUSH D/B/A LEO RUSH INSURANCE

### OPINION AND ORDER

Mary M. Lisi, Chief United States District Court Judge.

The question before the Court is whether New Hampshire privilege statutes protect from disclosure documents and communications exchanged by the defendant Colonial American Casualty and Surety Company ("Colonial") with the Insurance Fraud Investigation Unit of the New Hampshire Department of Insurance. The plaintiffs, US Real Estate Limited Partnership ("USRELP") and Gilbane Building Company ("Gilbane"), have appealed from a magistrate judge's order denying the plaintiffs' motion to compel production of certain documents which Colonial supplied to New Hampshire government entities during the course of the New Hampshire fraud investigation of Colonial's former agent, defendant Leo Rush ("Rush"). For the reasons stated below, the appeal is DENIED and the magistrate judge's order is AFFIRMED.

### Background

In February and October of 2005, Gilbane, a Rhode Island

corporation, and USRELP, a Texas limited Partnership, entered into two Trade Contract Agreements with Fenestration Architectural Products, LLC ("Fenestration") in connection with construction of the GTECH building in Providence, Rhode Island. As required by the Trade Contract Agreements, Fenestration provided a Labor and Material Bond and a Performance Bond (together, the "Bonds") for each agreement to Gilbane and USRELP as obligees. The Bonds were issued by Rush, a New Hampshire based insurance/bonding agent, in the name of Colonial, a Maryland corporation, as surety. As was later revealed, at the time Rush issued the Bonds, he had already been terminated by Colonial as an agent "for reasons of dishonesty." First Amended Complaint ¶ 16. When Fenestration defaulted by failing to discharge its contractual obligations, Gilbane filed a notice of default with Colonial, who denied ever having authorized or approved the issuance of the Bonds.

Pursuant to a Joint Prosecution Agreement, USRELP and Gilbane filed suit in this Court, asserting claims of negligence and breach of contract against Colonial and claims of fraud and conversion against Rush. The First Amended Complaint alleges, *inter alia*, that Colonial failed to provide notice to Gilbane or the general public of Colonial's termination of Rush as an authorized agent or to undertake other reasonable measures to ensure Rush would not issue fraudulent bonds. USRELP and Gilbane assert that Colonial failed to establish proper protocols and procedures for dealing

with rogue agents and particularly, that Colonial failed to "collect all tangible indicia of agency authority" from Rush after learning of Rush's misconduct, thus enabling him to continue his fraudulent activities. Id. at ¶ 22.

In the course of discovery, USRELP and Gilbane requested production of certain documents and communications from Colonial. Colonial objected, claiming that the documents were privileged attorney-client communications or work product. After reviewing the documents *in camera*, Magistrate Judge Almond determined that certain e-mails identified in entries 1-16 on Colonial's privilege log were protected from disclosure by the attorney-client privilege. Supplemental Memorandum and Order, October 26, 2009 (Docket No. 55). With respect to entries 17-30, which consist of e-mail communications to and/or from representatives of the State of New Hampshire Department of Insurance, Colonial claimed that the e-mails were protected from disclosure as attorney-client communications or work product under the "common interest doctrine" exception to the waiver rule.

Initially, Magistrate Judge Almond rejected Colonial's claim of privilege on that basis because no "common interest" existed between New Hampshire authorities and Colonial. New Hampshire regulators' primary interest involved protecting the public (e.g. from rogue agents), whereas Colonial's interest was primarily to protect itself from liability. Pursuant to an October 26, 2009

Supplemental Memorandum and Order, Colonial was required to produce the non-privileged documents identified in entries 17-30.

Colonial objected and appealed the Supplemental Memorandum and Order to this Court, claiming, for the first time, that it had an "absolute statutory understanding" that its communications with New Hampshire government entities would remain privileged. In its appeal, Colonial relied on two New Hampshire statutes addressing privilege, N.H. Rev. Stat. Ann. §§ 417:29 and 417:30. Because this argument had not been raised before the Magistrate Judge, this Court remanded the matter with instructions to determine whether Colonial held such an "absolute understanding" regarding the confidentiality of its documents under the New Hampshire statutory provisions.

On remand, Colonial raised, again for the first time, the applicability of a different New Hampshire statute addressing privilege, N.H. Rev. Stat. Ann. § 400-A:16. Colonial also presented the Affidavit of Jodene Barth ("Barth"), a Zurich North America[1] Investigator, who affirmed that the New Hampshire investigation of Rush "had been conducted pursuant to N.H.R.S.A. § 400-A:16 and N.H.R.S.A. § 417:23-417:31." Colonial argued that it had an "absolute expectation and understanding" that the New Hampshire statutory provisions would protect the confidentiality

---

[1] Zurich North America is a trade name that refers to a group of insurance companies that includes Colonial.

and privilege of the documents and communications it shared with the New Hampshire Fraud Unit.  In response, USRELP and Gilbane maintained that Colonial's disclosure of the documents to the New Hampshire authorities resulted in waiver of the privilege.  The plaintiffs also suggested that application of the New Hampshire statutes would afford a potentially liable insurance company protection from discovery by simply producing damaging documents to the New Hampshire authorities.

After reviewing the New Hampshire statutes and considering the parties' arguments, Magistrate Judge Almond issued a further Memorandum and Order on March 9, 2010, in which he determined that "when Colonial produced documents or communicated with these New Hampshire government entities, Colonial had a reasonable expectation that the communications would not act as a waiver of applicable privileges and put them in the public domain." Memorandum and Order, March 9, 2010 (Docket No. 85) at 5.

Accordingly, he denied the plaintiffs' motion to compel documents Nos. 17-30.

On March 23, 2010, USRELP and Gilbane filed an objection and appeal of the Memorandum and Order pursuant to Rule 72 of the Federal Rules of Civil Procedure, to which Colonial responded with an objection on April 6, 2010.[2]

---

2

A review of the parties' briefs in the current appeal reveals that neither party advanced any new or additional arguments

## Standard of Review

In an appeal from a magistrate judge's order on nondispositive matters, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A determination is 'clearly erroneous' when, although there is evidence to support it, the court, after reviewing all the evidence, is left with the definite and firm conviction that the magistrate judge made a mistake." Harvard Pilgrim Health Care of New England v. Thompson, 318 F.Supp.2d 1, 6 (D.R.I. 2004)(citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed.746 (1948)).

## Discussion

Federal Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1)(Emphasis added). While attorney-client communications and work product are generally protected from discovery, such privileges can be waived by disclosure of such materials to a third party. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corporation), 348 F.3d 16, 23 (1st Cir. 2003)(Presence of third parties undermines confidentiality needed for attorney-client privilege).

---

regarding applicability of the New Hampshire statutory provisions in this case.

In a diversity suit involving only state-law claims, the protection of documents by an evidentiary privilege is governed by state law pursuant to Fed. R. Evid. 501.[3] Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 401 (1st Cir. 2005)(citing 8 Charles Alan Wright et al., Federal Practice and Procedure § 2016, at 224 (2d ed. 1994)). Under Rhode Island law, the disclosure of privileged information to a third party does not automatically result in a waiver of the privilege. Rosati v. Kuzman, 660 A.2d 263, 266 (R.I. 1995). Instead, the relevant inquiry focuses on the reasonable expectation of confidentiality by the party making the disclosure, which makes the identity of the third party particularly relevant. Rosati v. Kuzman, 660 A.2d at 266-67.

Section 400-A:16 of the New Hampshire Revised Statutes relates to investigations by the New Hampshire Department of Insurance ("NHDOI"), which is an independent regulatory agency of the State. With respect to information provided by an insurance company to the NHDOI, Section 400-A:16 provides:

---

[3]

Fed. R. Evid. 501 provides, in pertinent part, as follows:

"[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

> Except as provided in subparagraphs (a)-(d),[4] any documents, materials, or other information in the control or possession of the insurance department that is furnished by an insurer, producer, or an employee or agent thereof acting on behalf of the insurer or producer, or from the National Association of Insurance Commissioners, its affiliates or subsidiaries, or from regulatory and law enforcement officials of other foreign or domestic jurisdictions, or is otherwise obtained by the commissioner in an investigation pursuant to this section shall be confidential by law and privileged, shall not be subject to RSA 91-A, shall not be subject to subpoena, and <u>shall not be subject to discovery or admissible in evidence in any private civil action</u>. Neither the commissioner nor any person who received documents, materials, or other information while acting under the authority of the commissioner shall be permitted or required to testify in any private civil action concerning any confidential documents, materials, or information subject to this section. <u>No waiver of any applicable privilege or claim of confidentiality in the documents, materials, or information shall occur as a result of disclosure to the commissioner under this section or as a result of sharing as authorized herein.</u>

N.H. Rev. Stat. Ann. § 417-A:16 (Emphases added).

Section 417:29 of the New Hampshire Revised Statutes relates to investigations by the Insurance Fraud Investigation Unit (the "Fraud Unit") established within NHDOI. The Fraud Unit is tasked with assisting in "investigating insurance fraud or other insurance-related criminal activity and in developing and implementing programs to prevent insurance fraud." N.H. Rev. Stat. Ann. § 417:23. The Unit is authorized, *inter alia*, to subpoena witnesses or compel the production of documents. <u>Id.</u> Section

---

[4] Subparagraphs (a)-(d) list circumstances not applicable in this case.

417:29 provides, in pertinent part, as follows:

> The unit's papers, documents, reports, or evidence relative to the subject of investigation under this section shall remain confidential and shall not be subject to public inspection or disclosure. Further, such papers, documents, reports, or evidence relative to the subject of an investigation under this section shall be privileged and shall not be subject to subpoena, discovery, or disclosure in any proceeding other than the action initiated by the unit, except as specifically authorized in this subdivision.

According to Colonial, after it learned about Rush's issuance of the fraudulent bonds, it engaged in periodic communications with representatives of the New Hampshire Office of the Attorney General and NHDOI, which were conducting an investigation into Rush's illegal activities. Zurich Investigator Barth represented in her sworn affidavit that she understood and expected that "any and all documents, materials and communications exchanged between Zurich and the Fraud Unit were exchanged pursuant to N.H.R.S.A. § 400-A:16, and N.H.R.S.A. §§ 417:23-417:31" and that those statutes "memorialize the expectations of both Zurich and the Fraud Unit regarding any and all documents, materials, and communications exchanged between Zurich and the Fraud Unit." Barth Affidavit ¶¶ 8,9.

As Colonial concedes, there is little in the way of legislative history nor any case law interpreting either of these statutes. However, the language of Section 400-A:16 is clear: it prohibits the disclosure of any "documents, materials, or other

9

information" that has been furnished to the NHDOI by an insurer. N.H. Rev. Stat. Ann. § 400-A:16. The statute also provides that such items "shall not be subject to discovery or admissible in evidence in any private civil action." Any documents, materials, or information that have been disclosed to or shared with NHDOI do not result in "waiver of any applicable privilege or claim of confidentiality." Id.

Documents 17-30, which are in dispute in this matter, are identified as communications between Colonial and representatives of the NHDOI in connection with NHDOI's ongoing fraud investigation of Rush. As previously determined by Magistrate Judge Almond's *in camera* review, the disputed documents are privileged, primarily as work product and/or under the attorney-client privilege. Memorandum and Order, March 9, 2010 (Docket No. 85) at 3 n.1. As such, they are discoverable by the plaintiffs only if the privilege has been waived, e.g. by disclosure to a third party. Based on the language of Section 400-A:16 and Barth's representation, Colonial's disclosure of information or materials to NHDOI was made in the course of NHDOI's investigation into Rush's illegal activities and with the expectation of confidentiality. Therefore, the communications between Colonial and NHDOI or the Fraud Unit remain privileged.

Gilbane and USRELP argue that "the New Hampshire legislature cannot, by enacting the Statutes at issue, dictate the

discoverability and admissibility of evidence in a Federal Court Action in Rhode Island," Plaintiffs' Mem. 17, but they fail to develop that argument or to provide any legal support therefor. The significance of the New Hampshire statutes is that Colonial had an understanding and expectation that its privilege would be preserved if it shared certain information with the New Hampshire Authorities. Under those circumstances, Colonial's disclosure of that information cannot be said to have resulted in a waiver of an acknowledged privilege.

The Plaintiffs' suggestion that "if the New Hampshire Statutes are read in such a manner, then a potentially liable insurance company . . . could shield itself from producing damaging documents in civil litigation simply by providing those documents to the New Hampshire Authorities," id. at 18, is unsupported and speculative. Whether New Hampshire seeks to protect the integrity of an open investigation or aims to ensure the cooperation of insurance companies by encouraging them to disclose potentially damaging information, Section 400-A:16 clearly provides an exception to waiver of privilege for documents that are provided to NHDOI in connection with an investigation.

## Conclusion

For the foregoing reasons, Magistrate Judge Almond's order denying plaintiffs' motion to compel is AFFIRMED and the plaintiffs' appeal is DENIED and DISMISSED.

SO ORDERED:

*Mary M. Lisi*
Mary M. Lisi
Chief United States District Judge
Date: May  11 , 2010